# TABLE OF CONTENTS

                                                                                        **Page**

I .   Introduction ................................................................................................ 1

II .  Statement of Facts ...................................................................................... 4

      A.   The FDA Granted Premarket Approval for the Infuse Device
           in 2002 ............................................................................................ 5

      B.   The FDA Continues to Regulate the Infuse Device ................................. 6

      C.   Off-Label Use of Medical Devices ....................................................... 7

III . Argument ................................................................................................... 9

      A.   Plaintiffs' Claims Are Expressly Preempted By Section
           360k(a) .......................................................................................... 10

           1.   Premarket Approval Imposes Federal Requirements
                With Preemptive Effect .......................................................... 11

           2.   Plaintiffs' Claims Are Based On State Law
                Requirements Different From Or Additional To The
                Federal Requirements ............................................................. 12

      B.   Plaintiffs Cannot Avoid Express or Implied Preemption ........................ 19

           1.   Plaintiffs' Boilerplate Allegations Of Federal
                Violations Do Not Affect Express Preemption ........................... 20

           2.   Section 337(a) Impliedly Preempts and Bars
                 Plaintiffs' Claims ................................................................. 23

      C.   Independent Grounds Also Bar Certain Claims .................................... 26

           1.   Plaintiffs' Fraud Claims Are Not Pled with
                 Particularity ........................................................................ 26

           2.   Plaintiffs' Breach of Express Warranty Claim Fails ................... 30

           3.   Plaintiffs' Unfair Competition Law Claim Fails ......................... 31

           4.   Plaintiffs' Punitive Damages Claim Fails .................................. 31

IV .  Conclusion ................................................................................................ 32

- i -

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ali v. Allergan USA, Inc.,*
    2012 WL 3692396 (E.D. Va. Aug 23, 2012) ..................................................... 19

*Alton v. Medtronic, Inc.,*
    2013 WL 4786381 (D. Or. Sept. 6, 2013) ........................................................ 13

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................9

*Batzel v. Smith,*
    333 F.3d 1018 (9th Cir. 2003) ........................................................................ 29

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................................9

*Brandt v. Medtronic, Inc.,*
    No. 12-2-07422-4 SEA (Wash. Super. Ct. Sept. 18, 2013) .............................. 13

*Buckman Co. v. Plaintiffs' Legal Comm.,*
    531 U.S. 341 (2001) ......................................................................... passim

*Burns v. Medtronic, Inc.,*
    2013 WL 5596122 (C.D. Cal. Oct. 8, 2013) .........................................................3

*Cabana v. Stryker Biotech, LLC,*
    2012 WL 3876245 (Cal. Super. Aug. 20, 2012) ................................................ 13

*Cafasso v. General Dynamics C4 Systems, Inc.,*
    637 F.3d (9th Cir. 2011) ........................................................................... 27, 29

*Caplinger v. Medtronic, Inc.,*
    921 F. Supp. 2d 1206 (W.D. Okla. 2013) ................................................ passim

*Coleman v. Medtronic, Inc.,*
    ---Cal.Rptr.3d---, 2014 WL 286096 (2014) ...................................................... 13

*Covert v. Stryker Corp.,*
　　2009 WL 2424559 (M.D.N.C. Aug. 5, 2009)...................................... 19

*Cox v. Depuy Motech, Inc.,*
　　2000 WL 1160486 (S.D. Cal. Mar. 29, 2000) ......................................7

*Davis v. Four Seasons Hotel Ltd.,*
　　122 Hawaii 324, 228 P.3d 303 (2010) ............................................... 31

*Dawson v. Medtronic, Inc.,*
　　2014 WL 37851 (D.S.C. Jan. 6, 2014) (dismissing amended complaint
　　with prejudice and adopting reasoning of prior decision, *Dawson v.
　　Medtronic, Inc.*, 2013 WL 4048850 (D.S.C. Aug. 9, 2013))...................... passim

*Eidson v. Medtronic, Inc.,*
　　---F. Supp. 2d.---, 2013 WL 5533081 (N.D. Cal. Oct. 3, 2013)............. 3, 13, 14

*Ellis v. Crockett,*
　　51 Haw. 45 (1969) ..................................................................... 27

*Erickson v. Boston Scientific Corp.*
　　846 F. Supp. 2d 1085 (C.D. Cal. 2011) ...................................... passim

*Gavin v. Medtronic, Inc.*,
　　2013 WL 3791612 (E.D. La. July 19, 2013) .............................. passim

*Harris v. Medtronic, Inc.,*
　　2013 WL 4011624 (Cal. Super. Aug. 1, 2013)................................ 13

*Hawkins v. Medtronic, Inc.,*
　　No. 1:13-cv-00499 (E.D. Cal. Jan. 30, 2014) (attached as Exhibit 1 to the
　　Declaration of Corlis J. Chang) ............................................... passim

*Houston v. Medtronic, Inc.*,
　　---F. Supp. 2d---, 2013 WL 3927839 (C.D. Cal. July 30, 2013) ............... passim

*Huggins v. Medtronic, Inc.*,
　　No. 12CV40 (Colo. Dist. Ct. Feb. 21, 2013) ..................................... 13

*In re Actimmune Mktg. Litig.,*
　　2009 WL 3740648 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 Fed. App'x 651
　　(9th Cir. 2011)........................................................................ 28

*In re Medtronic Sprint Fidelis Leads Prods. Liab. Litig. (Bryant v. Medtronic, Inc.)*,
   623 F.3d 1200 (8th Cir. 2010) ("*Bryant*") .................................................. passim

*In re Zyprexa Prods. Liab. Litig.*,
   2008 WL 398378 (E.D.N.Y. Feb. 12, 2008) ...................................................... 25

*Kashani-Matts v. Medtronic Inc.*,
   2013 WL 6147032 (C.D. Cal. Nov. 22, 2013)........................................... passim

*Kemp v. Medtronic, Inc.*,
   231 F.3d 216 (6th Cir. 2000) ......................................................................... 24

*Lawrence v. Medtronic, Inc.*,
   No. 27CV131197, 2013 WL 4008821 (Minn. Dist. Ct. Aug. 7, 2013)...... passim

*Ledet v. Medtronic, Inc.*,
   2013 WL 6858858 (S.D. Miss. Dec. 30, 2013) ........................................ passim

*Loreto v. Procter & Gamble Co.*,
   515 Fed. Appx. 576 (6th Cir. 2013)................................................................. 25

*Martinez v. Jeffrey Oppenheimer, M.D.*,
   No. 12-31442 CA 06 (Fla. 11th Cir. Ct. Mar. 5, 2013) ..................................... 13

*McGuan v. Endovascular Techs.*,
   182 Cal. App. 4th 974 (2010) ......................................................................... 19

*McMullen v. Medtronic, Inc.*,
   421 F.3d 482 (7th Cir. 2005) .......................................................... 14, 20, 22

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996)....................................................................................... 20

*Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*,
   2008 WL 4367554 (S.D. Ind. Sept. 18, 2008).................................................... 8

*Otis-Wisher v. Fletcher Allen Health Care, Inc.*,
   --- F. Supp. 2d ---, 2013 WL 3214714 (D. Vt. June 25, 2013)..................... 3, 13

*Perez v. Nidek Co., Ltd.*,
   711 F.3d 1109 (9th Cir. 2013) ................................................................. passim

*Ramirez v. Medtronic, Inc.*,
    2013 WL 4446913 (D. Ariz. Aug. 21, 2013).................................................... 13

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008)............................................................................. passim

*Riley v. Cordis Corp.*,
    625 F. Supp. 2d 769 (D. Minn. 2009).......................................... 9, 24, 25

*Sanda v. Medtronic, Inc.*,
    No. 2013L000305 (Ill. Cir. Ct. Jul. 18, 2013) .................................... 13

*Simmons v. Boston Scientific Corp.*,
    2013 WL 1207421 (C.D. Cal. Mar. 25, 2013)............................... passim

*State v. Hoshijo ex rel. White*,
    102 Haw. 307 (2003) ................................................................................ 29

*Stengel v. Medtronic, Inc.*,
    704 F.3d 1224 (9th Cir. 2013) (en banc) ...................................... 12, 14

*U.S. v. Caronia*,
    703 F.3d 149 (2d Cir. 2012)........................................... 8, 18, 21, 22

*Walker v. Medtronic, Inc.*,
    670 F.3d 569 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 162 (2012)................... 11

*Wolicki-Gables v. Arrow Int'l, Inc.*,
    634 F.3d 1296 (11th Cir. 2011) ...................................... 11, 12, 14, 22

## Statutes

21 U.S.C. § 331(b) ............................................................................. 21

21 U.S.C. §§ 360c(a)(2)(C), 360e(d) ...................................................5

21 U.S.C. § 360e(d)(6)(A)(i)...............................................................6

21 U.S.C. §§ 360e(e)(1) and 360h(e)................................................ 6,7

21 U.S.C. § 360k(a)(1)................................................................. 12

FDCA ........................................................................................ passim

FDCA, 21 U.S.C. § 337(a) ............................................................. passim

Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 360k(a) ........... passim

H.R.S. §§ 480 *et seq.* ................................................................. 31

**OTHER AUTHORITIES**

21 C.F.R. § 814.39(a), (c) .............................................................. 6

Rule 12(b)(6) of the Federal Rules of Civil Procedure ............................. 9

Rule 8 ............................................................................ 4, 30, 31

Rule 9(b) ......................................................................... 4, 26, 27

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KARLA BEAVERS-GABRIEL, an individual,<br><br>                    Plaintiff,<br><br>          vs.<br><br>MEDTRONIC, INC. AND MEDTRONIC SOFAMOR DANEK USA, INC.,<br><br>                    Defendants. | Civil No.: CV13 00686 JMS RLP<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

## I.      Introduction

This case arises from the use of a Class III prescription medical device—

Medtronic's Infuse Device—whose design, manufacture, and labeling were

specifically approved by the Food and Drug Administration (FDA) under the

agency's Premarket Approval (PMA) process.[1]  Plaintiffs' claims are expressly

preempted by the Medical Device Amendments (MDA) to the Federal Food, Drug,

and Cosmetic Act (FDCA), 21 U.S.C. § 360k(a), and impliedly preempted by

*Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341 (2001) and the "no private

right of action clause" of the FDCA, 21 U.S.C. § 337(a).  As the Supreme Court

explained in *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008), Congress granted the

FDA exclusive authority to set all requirements for PMA-approved devices, and

---

[1]   The Complaint's caption is missing plaintiff Dennis Gabriel although he is identified in the body of the Complaint under the "Parties" section.  [*See Complaint, ¶ 16*]  Medtronic assumes his exclusion from the caption page was a mistake.

enacted § 360k(a) to expressly preempt any state-law claim that would impose a requirement "different from, or in addition to" those imposed by the FDA. *Kashani-Matts v. Medtronic Inc.*, 2013 WL 6147032, *3 (C.D. Cal. Nov. 22, 2013); *see also Simmons v. Boston Scientific Corp.*, 2013 WL 1207421, *3 (C.D. Cal. Mar. 25, 2013); *Erickson v. Boston Scientific Corp.* 846 F. Supp. 2d 1085, 1091 (C.D. Cal. 2011). Congress also directed that all actions to enforce the FDCA "shall be by and in the name of the United States." 21 U.S.C. § 337(a); *see also Kashani-Matts*, 2013 WL 6147032, *3.

Because each of Plaintiffs' claims would impose state-law requirements on the design or labeling of the Infuse Device that are different from or in addition to those imposed by the FDA, § 360k(a) and *Riegel* compel that they be dismissed as expressly preempted. In fact, Plaintiffs' claims here are similar to the claims recently dismissed in three Infuse Device cases in federal court in California: *Hawkins v. Medtronic, Inc.*, No. 1:13-cv-00499 (E.D. Cal. Jan. 30, 2014) (attached as Exhibit 1 to the Declaration of Corlis J. Chang); *Kashani-Matts*, 2013 WL 6147032; and *Houston v. Medtronic, Inc.*, ---F. Supp. 2d---, 2013 WL 3927839, *7-*8 (C.D. Cal. July 30, 2013). *Hawkins*, *Kashani-Matts*, and *Houston* are largely consistent with the decisions of seven other federal[2] courts that have

---

[2] State courts have also dismissed Infuse Device claims on preemption grounds. Indeed, in *Lawrence v. Medtronic, Inc.*, No. 27CV131197, 2013 WL 4008821 (Minn. Dist. Ct. Aug. 7, 2013), which controls not only the *Lawrence* case itself,

dismissed Infuse Device claims on preemption and failure to adequately plead

grounds:

- *Dawson v. Medtronic, Inc.,* 2014 WL 37851 (D.S.C. Jan. 6, 2014) (dismissing amended complaint with prejudice and adopting reasoning of prior decision, *Dawson v. Medtronic, Inc.*, 2013 WL 4048850 (D.S.C. Aug. 9, 2013));
- *Ledet v. Medtronic, Inc.*, 2013 WL 6858858 (S.D. Miss. Dec. 30, 2013);
- *Burns v. Medtronic, Inc.*, 2013 WL 5596122 (C.D. Cal. Oct. 8, 2013)
- *Eidson v. Medtronic, Inc.,* ---F. Supp. 2d.---, 2013 WL 5533081 (N.D. Cal. Oct. 3, 2013);
- *Gavin v. Medtronic, Inc.*, 2013 WL 3791612 (E.D. La. July 19, 2013);
- *Otis-Wisher v. Fletcher Allen Health Care, Inc.*, --- F. Supp. 2d ---, 2013 WL 3214714 (D. Vt. June 25, 2013); and
- *Caplinger v. Medtronic, Inc.*, 921 F. Supp. 2d 1206 (W.D. Okla. 2013).

To the extent Plaintiffs seek to enforce the FDCA or the FDA's

implementing regulations, those claims are also impliedly preempted by *Buckman*

and barred by §337(a). *See Houston*, 2013 WL 3927839, *8; *Kashani-Matts*, 2013

WL 6147032, *3. Plaintiffs' claims do not fit through the "narrow gap" between

expressly preempted and impliedly preempted claims that the application of *Riegel*

and *Buckman* together create. *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1120 (9th

Cir. 2013) (quoting *In re Medtronic Sprint Fidelis Leads Prods. Liab. Litig.*

(*Bryant v. Medtronic, Inc.*)*,* 623 F.3d 1200, 1204 (8th Cir. 2010) ("*Bryant*")). And

while Plaintiffs' Complaint is laced with allegations Medtronic promoted the

Infuse Device for "off-label" uses—*i.e.*, uses not indicated on the FDA-approved

---

but also 325 other Infuse-related cases pending in Minnesota state court, the court dismissed all of the plaintiff's claims. Notably, the plaintiff in *Lawrence* was represented by the same counsel and made similar allegations as here.

label—preemption still applies. *See Houston*, 2013 WL 3927839, *8; *Caplinger*, 921 F. Supp. 2d at 1218; *Ledet*, 2013 WL 6858858, *4; *Dawson*, 2013 WL 4048850, *6-7.

Moreover, independent of preemption, Plaintiffs' misrepresentation and fraud claims must be dismissed because they are not alleged with the requisite particularity required by Rule 9(b).  Similarly, Plaintiffs' warranty claim fails to plead sufficient facts to satisfy Rule 8.  Finally, Plaintiff's Unfair Competition Law claim fails because Plaintiffs have not alleged an "antitrust injury" with sufficient facts to comply with Rule 8.

For all these reasons, Medtronic's Motion to Dismiss should be granted.

## II.    Statement of Facts

For purposes of this Motion, the relevant factual allegations are straightforward:

(1)   The medical device at issue is the Infuse Device.  [*See e.g., Complaint, ¶ 1*]; and

(2)   The Infuse Device is a Class III medical device approved by the FDA through the rigorous Premarket Approval process.  [*See Complaint, ¶ 74; see also Medtronic's Request for Judicial Notice ("RJN"), Ex. A, the Infuse Device Premarket Approval Database Listing, p. 1 (The RJN is being filed concurrently as a separate document.)*]

Although these two background facts are all that is required to grant Medtronic's preemption Motion to Dismiss under the controlling Supreme Court standards, a more detailed regulatory history follows to provide this Court with

additional context for the preemption issue at hand.

## A.   The FDA Granted Premarket Approval for the Infuse Device in 2002

As initially approved by the FDA, the "Infuse Device" consists of three

parts: (1) a recombinant human bone morphogenetic protein-2 ("rhBMP-2"); (2) a

collagen "scaffold" (that is, a sponge), and (3) a tapered metallic spinal fusion

cage.[3] [*See RJN, Ex. B*] The Infuse Device is a Class III medical device subject to

the rigorous Premarket Approval process, which applies to innovative devices like

the Infuse Device that, by definition, present a potential for unreasonable risk of

illness or injury, and are important to supporting or sustaining human life, or

preserving human health.  *See Riegel*, 552 U.S. at 317; *Buckman*, 531 U.S. at 344.

For these reasons, the FDA "grants premarket approval only if it finds there is a

'reasonable assurance' of the device's 'safety and effectiveness'" after

"'weig[hing] any probable benefit to health from the use of the device against any

probable risk of injury or illness from such use.'"  *Riegel*, 552 U.S. at 318 (quoting

21 U.S.C. §§ 360c(a)(2)(C), 360e(d)).  "[I]t *is* federal safety review."  *Id.* at 323

(emphasis in original).

---

[3]   While the FDA's initial Premarket Approval for the "Infuse Bone Graft/LT-Cage Lumbar Tapered Fusion Device" specified the LT-Cage, later-approved PMA Supplements authorized alternative cage components, "InterFix" and "InterFix RP."  [*See RJN, Ex. D*]  In this configuration, the Infuse Device is labeled for use in the treatment of degenerative disc disease in a surgical procedure known as spinal fusion.  [*See RJN, Ex. B, p. 1*] The FDA has also approved PMA Supplements for the Infuse Device in other configurations without a cage component.  [*See RJN, Exs. E & F*]

On July 2, 2002, after a nearly year-and-a-half review, the FDA granted
Premarket Approval for the Infuse Device under PMA Number P000058.  [*RJN,
Ex. A, p. 1, Ex. B, p. 1*] Additionally, since the Infuse Device first received
Premarket Approval, the FDA has approved forty-seven supplements to its
Premarket Approval.  [*RJN, Ex. A, p. 2*]  The latest of these supplements was
approved by the FDA on ***December 6, 2013.***  [*RJN, Ex. C, the FDA's Premarket
Approval Database Listing for PMA Supplement 054 for Infuse*]

## B.    The FDA Continues to Regulate the Infuse Device

After the FDA grants Premarket Approval to a device, its regulatory
oversight does not end.  "Once a device has received Premarket Approval, [federal
law] forbids the manufacturer to make, without FDA permission, changes in design
specifications, manufacturing processes, labeling, or any other attribute, that would
affect safety or effectiveness."  *Riegel*, 552 U.S. at 319 (citing 21 U.S.C. §
360e(d)(6)(A)(i)).  To make such changes, a manufacturer must submit a PMA
Supplement subject to the same rigorous standards of review as the initial
application, and can implement the proposed changes only after FDA approval.
*See id.* (citing 21 C.F.R. § 814.39(a), (c)).  The FDA has the power to withdraw
premarket approval based on newly reported data or existing information and ***must***
withdraw approval if it determines that a device is unsafe or ineffective under the
conditions in its labeling.  *See id.*, at 319-320 (citing 21 U.S.C. §§ 360e(e)(1) and

360h(e)) (emphasis added).  The FDA has never revoked, withdrawn, or suspended

the Premarket Approval for the Infuse Device.  [*RJN, Ex. A*]

## C.    Off-Label Use of Medical Devices

Plaintiff Karla Beavers-Gabriel alleged her physicians used the Infuse

Device in an "off-label" manner—*i.e.*, different from the "Indications for Use" on

the device's FDA-approved labeling, namely in a transforaminal lumbar interbody

fusion and a posterolateral fusion at L5-S1.  [*E.g.*, *Complaint*, ¶ *1; id.*, ¶ *299*]

Plaintiff further alleges that she developed heterotopic bone growth (also known as

ectopic or excessive bone growth).  [*Id.*, ¶ *301*]

Off-label use is commonly the standard of care, and is not expressly

prohibited by the FDCA.  The Supreme Court explained that "'off-label' usage of

medical devices…is an accepted and necessary corollary of the FDA's mission to

regulate in this area without directly interfering with the practice of medicine."

*Buckman*, 531 U.S. at 350; *see also Cox v. Depuy Motech, Inc.*, 2000 WL

1160486, *8 (S.D. Cal. Mar. 29, 2000) ("A physician may use any device legally

on the market in any way the physician deems appropriate which may be consistent

with the seller's labeling or 'off-label,'…A seller is not liable even if it knows of

off-label uses").  As the *Caplinger* court observed in dismissing similar Infuse

Device claims, "off-label use is not illegal or even disfavored…but is an accepted

and valuable part of the practice of medicine." 921 F. Supp. 2d at 1218 n.3.[4]

Indeed, the FDA's "approval process generally contemplates that approved [devices] will be used in off-label ways." *U.S. v. Caronia*, 703 F.3d 149, 166 (2d Cir. 2012). The FDA's approval process for the Infuse Device did as well. Among other label language about off-label procedures, the FDA required the Infuse Device label to carry a warning about ectopic bone growth—the very complaint Plaintiff alleges—from off-label procedures, that "When degenerative disc disease was treated by a posterior lumber interbody fusion procedure with cylindrical threaded cages (INTER FIX™ devices), posterior bone formation was observed in some instances." [*RJN, Ex. I, p. 1*]

---

4   Plaintiff refers to off-label uses as "non-FDA-approved uses," but the FDA has said that the similar "term 'unapproved uses' is … misleading," because the agency does not regulate the use of medical products. FDA, Use of Approved Drugs for Unlabeled Indications, 12 FDA Drug Bull. 4, 5 (1982). Through the PMA process, the FDA does not regulate particular ***uses*** of medical devices; it instead approves (or disapproves) only ***devices*** and ***their labeling***. *See, e.g., Perez,* 711 F.3d at 1115; *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC,* 2008 WL 4367554, at *6 (S.D. Ind. Sept. 18, 2008) ("[T]he FDA does not approve or disapprove the use of medical devices for specific treatments.").; *see also Hawkins,* slip op., p. 8 ("[T]he application of Section 360k(a) is 'with respect to a *device,*' not the manner in which the device was actually used") (emphasis original). Doctors are free to use a device in any manner they deem appropriate, and off-label use also has no impact on preemption. *Id.* In *Riegel* itself, the device at issue was used in an off-label manner. *Riegel,* 552 U.S. at 320. Despite that off-label usage, the Supreme Court concluded that the plaintiffs' claims were preempted. *Id.* at 321-30; *see also Gavin,* 2013 WL 3791612, at *12 (recognizing *Riegel* involved an off-label use).

## III.   Argument

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate where the complaint fails to state a claim for relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Perez*, 711 F.3d at 1113.

The MDA's express preemption provision is cast in very broad terms:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement –
>> (1) which is ***different from, or in addition to, any requirement*** applicable under this chapter to the device, and
>> (2) which ***relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device*** under this chapter.

21 U.S.C. § 360k(a) (emphasis added).

Congress has—through § 360k(a) as interpreted in *Riegel*—expressly preempted state-law claims challenging the design, manufacture, or labeling of a Premarket Approved medical device.  It also  has—through § 337(a) as interpreted in *Buckman*—impliedly preempted state-law tort claims that seek to enforce the federal medical device regulations.  Together, "'*Riegel* and *Buckman* create a narrow gap through which a plaintiff's state-law claim must fit if it is to escape express or implied preemption.'" *Perez*, 711 F.3d at 1120 (quoting *Bryant*, 623 F.3d at 1204 (in turn quoting *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009))).  To avoid dismissal, "'[t]he plaintiff must be suing for conduct that

*violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA ([because] such a claim would be impliedly preempted under *Buckman*).'" *Caplinger*, 921 F. Supp. 2d at 1215 (quoting *Bryant*, 623 F.3d at 1204); *see also Gavin*, 2013 WL 3791612, *5. Plaintiffs' claims do not fit through that narrow gap; each claim is expressly and impliedly preempted, and must be dismissed. *See Caplinger*, 921 F. Supp. 2d at 1219-24; *Hawkins,* No. 1:13-cv-00499, slip op. at 7; *Ledet*, 2013 WL 6858858, at *4-6; *Kashani-Matts*, 2013 WL 6147032, at *3-6.

A.     **Plaintiffs' Claims Are Expressly Preempted By Section 360k(a)**

In enacting 21 U.S.C. § 360k(a), Congress "swept back some state obligations and imposed a regime of detailed federal oversight," enforced by an expert federal agency, rather than private plaintiffs and lay juries. *Riegel*, 552 U.S. at 316; *see also Houston*, 2013 WL 3927839, *4. Although § 360k(a)'s broad preemption of state tort claims may leave some individuals who are injured by FDA-approved medical devices "'without … judicial recourse,'" that was in Congress's estimation, outweighed by the benefit to the far greater number "who would suffer without new medical devices if juries were allowed to apply the tort law of 50 States to all innovations." *Riegel*, 552 U.S. at 326. As an alternative to private tort actions, Congress gave the FDA substantial authority to police and sanction device manufacturers under federal law. *See Buckman*, 531 U.S. at 349.

The Supreme Court in *Riegel* established a straightforward two-step procedure for determining if state law claims are expressly preempted under § 360k(a).  A court must first determine whether "the Federal Government has established requirements applicable to" the device. *Riegel*, 552 U.S. at 321.  If it has, the court must then determine whether the claims would impose "requirements with respect to the device that are 'different from, or in addition to'" the federal requirements. *Id*. at 322.  When, as here, both conditions are satisfied, the claims are expressly preempted.

1.  **Premarket Approval Imposes Federal Requirements With Preemptive Effect**

*Riegel* establishes that Premarket Approval of a medical device imposes federal requirements that preempt state tort claims.  Because "the FDA requires a device that has received Premarket Approval to be made with almost no deviations from the specifications in its approval application," "[p]remarket approval … imposes [federal] 'requirements'" as that term is used in § 360k(a).  552 U.S. at 322.  Claims involving a device that has received Premarket Approval, such as the Infuse Device, satisfy *Riegel*'s first condition automatically. *See id*. at 322–23; *see also Walker v. Medtronic, Inc.,* 670 F.3d 569, 573-74 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 162 (2012); *Wolicki-Gables v. Arrow Int'l, Inc.,* 634 F.3d 1296, 1300-01 (11th Cir. 2011).  *Riegel* then further held that state common-law claims impose "requirements … 'with respect to devices'" as that term is used in § 360k(a).

- 11 -

*Riegel*, 552 U.S. at 327. Thus, *Riegel* stands unequivocally for the proposition that § 360k(a) expressly preempts any state-law cause of action that would impose requirements respecting the safety or effectiveness of a PMA-device that are "'different from, or in addition to'" the requirements imposed by federal law. 552 U.S. at 321 (quoting 21 U.S.C. § 360k(a)); *see also, e.g.*, *Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1233 (9th Cir. 2013) (en banc) (cert. pet. pending); *Wolicki-Gables*, 634 F.3d at 1300-01; *Simmons*, 2013 WL 1207421, *3; *Erickson*, 846 F. Supp. 2d at 1091.

### 2.      Plaintiffs' Claims Are Based On State Law Requirements Different From Or Additional To The Federal Requirements

Simply put, claims arising from alleged off-label promotion are expressly preempted. *Perez*, 711 F.3d at 1118. In *Perez*, the plaintiffs alleged a fraud by omission claim and that the defendant had promoted the device at issue for off-label uses, and pointed to an FDA "warning letter" faulting the defendant's employees for modifying the device (in violation of PMA) so that it could be used off-label. *Id.* at 1113. The Ninth Circuit affirmed dismissal of the fraud by omission claim on the grounds of express preemption because the claim would add a disclosure requirement "'different from, or in addition to' the requirements applicable to the [device] under the MDA." *Id.* at 1118 (quoting 21 U.S.C. § 360k(a)(1)). As held in Infuse Device cases, such claims are "the exact type of claim that is expressly preempted under § 360k(a)," because they would "establish

[state-law] requirements different from, or in addition to, federal requirements for the Infuse device." *Caplinger*, 921 F. Supp. 2d at 1221-23; *accord Hawkins,* No. 1:13-cv-00499, slip op. at 12-13; *Eidson*, 2013 WL 5533081, *9; *Dawson,* 2013 WL 4048850, *6; *Houston*, 2013 WL 3927839, *8; *Gavin*, 2013 WL 3791612, *12; *Otis-Wisher*, 2013 WL 3214714, *4-*5.[5]   Each of Plaintiffs' claims fail for similar reasons.

### a.   Failure-to-warn claim

Plaintiffs' claim for strict products liability—failure-to-warn (Second Cause of Action) asserts a failure to warn theory.  Notably, Plaintiffs do ***not*** allege that Medtronic failed to provide any of the warnings required by the FDA through the PMA process.  Instead, Plaintiffs allege that Medtronic was, as a matter of state

---

[5]   *See also Lawrence,* 2013 WL 4008821 (dismissing all of plaintiff's Infuse-related claims, most without leave to amend, in case controlling approximately 325 other Infuse-related cases filed by the same plaintiff's counsel as here pending in Minnesota state court); *Harris v. Medtronic, Inc.,* 2013 WL 4011624 (Cal. Super. Aug. 1, 2013) (dismissing without prejudice each of claim relating to the Infuse Device); *but see Coleman v. Medtronic, Inc.,* ---Cal.Rptr.3d---, 2014 WL 286096 (2014) (affirmed dismissal of claims for fraud, intentional misrepresentation, unfair competition, and concealment, but allowing certain negligence and failure to warn theories to proceed past the pleading stage); *Brandt v. Medtronic, Inc.,* No. 12-2-07422-4 SEA (Wash. Super. Ct. Sept. 18, 2013); *Alton v. Medtronic, Inc*., 2013 WL 4786381 (D. Or. Sept. 6, 2013); *Ramirez v. Medtronic, Inc.,* 2013 WL 4446913 (D. Ariz. Aug. 21, 2013), mot. for reconsideration denied on Oct. 28, 2013; *Sanda v. Medtronic, Inc.,* No. 2013L000305 (Ill. Cir. Ct. Jul. 18, 2013); *Martinez v. Jeffrey Oppenheimer, M.D.,* No. 12-31442 CA 06 (Fla. 11th Cir. Ct. Mar. 5, 2013); *Huggins v. Medtronic, Inc.,* No. 12CV40 (Colo. Dist. Ct. Feb. 21, 2013); *Cabana v. Stryker Biotech, LLC,* 2012 WL 3876245 (Cal. Super. Aug. 20, 2012).

law, required to have given additional warnings, beyond those specified by the FDA.  But any such claim runs headlong into § 360k(a) because state law would require a warning different from what federal law requires.  *Riegel*, 552 U.S. at 329; *id.* at 320 (affirming dismissal of claims of strict liability and negligence in device labeling); *see also Hawkins,* No. 1:13-cv-00499, slip op. at 18-22; *Ledet*, 2013 WL 6858858, at *4; *Kashani-Matts*, 2013 WL 6147032, at *4; *Eidson,* 2013 WL 5533081, *12; *Houston,* 2013 WL 3927839, *8; *Caplinger*, 921 F. Supp. 2d 1219-1221, 1223-24; *Lawrence,* 2013 WL 4008821, *5; *accord, e.g., Wolicki-Gables*, 634 F.3d at 1301–02; *Bryant*, 623 F.3d at 1205; *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 489–90 (7th Cir. 2005).[6]  Thus, this claim is necessarily preempted.[7]

---

[6]   Federal law specifically ***forbids*** manufacturers from issuing warnings beyond those prescribed by the FDA.  Once a device receives premarket approval, "the MDA forbids the manufacturer to make, without FDA permission, changes in… labeling, or any other attribute, that would affect safety or effectiveness." *Riegel*, 552 U.S. at 319.

[7]   Medtronic anticipates Plaintiffs may rely on *Stengel* to argue that their failure to warn claim survives based on alleged failure to report adverse events.  In *Stengel*, the Ninth Circuit held that the plaintiffs' proposed negligence claim for failure to warn the FDA was not preempted insofar as the state-law duty parallels a federal-law duty to report adverse events to the FDA.  But *Stengel* is inapposite: in *Stengel*, the Plaintiffs alleged a failure to report adverse events *to the* FDA, whereas here, Plaintiffs do not allege a failure to report adverse events to the FDA, but rather a failure to report adverse events *in medical literature* [*See e.g., Complaint, ¶¶ 115, 150*]—even though the medical articles referred to were written by practicing surgeons, not Medtronic.  Nevertheless,  cases like *Perez, Simmons, Houston*, and *Kashani-Matts* demonstrate, Ninth Circuit courts still find preemption applies even post-*Stengel*.

### b.   Design defect claim

Plaintiffs' strict products liability – design defect (Third Cause of Action) is also preempted.  Although Plaintiffs allege the Infuse Device had a defective design, they do **not** allege that the design was anything other than the design approved by the FDA in the PMA process.  Thus, to prevail, Plaintiffs necessarily would have to prove that the Infuse Device should have employed a design **different** from that approved by the FDA.  *Riegel* squarely forecloses any such claim.  *See* 552 U.S. at 320 (MDA preempts "claims of strict liability … and negligence in the design" of device); *see also Caplinger*, 921 F. Supp. 2d at 1223 (design defect "is the exact type of claim that is expressly preempted under § 360k(a)"); *Kashani-Matts*, 2013 WL 6147042, at *4 (design defect claim preempted because it "is an 'attack' on the FDA review process rather than a parallel state claim."); *Ledet*, 2013 WL 6858858, at *4 (dismissing strict liability design defect claim); *Houston,* 2013 WL 3927839, *8 (same); *Lawrence,* 2013 WL 4008821, *6 (same); *Simmons,* 2013 WL 1207421, *5 (same); *Erickson*, 846 F. Supp. 2d at 1088, 1093 (same).

### c.   Fraud claims

The concealment allegations of Plaintiffs' fraudulent misrepresentation and fraud in the inducement claim (First Cause of Action) are premised on allegations that Medtronic should have said something additional or different to Plaintiffs'

physicians about the safety and risks of the Infuse Device than what the FDA required.  (*See, e.g., Complaint,* ¶ 309)  But in *Perez*, the Ninth Circuit held that a fraud claim premised on concealment (related to off-label use and promotion) was expressly preempted because "the disclosure requirement" plaintiff advocated was "'different from, or in addition to' the requirements applicable to the [device] under the MDA" and therefore plaintiff was "effectively seek[ing] to write in a new provision to the FDCA."  *Perez*, 711 F.3d at 1118.  Plaintiffs' concealment theory is preempted for the same reason.

Moreover, Plaintiffs' attempt to state a fraud claim based on affirmative misrepresentations outside the label as alleged in their "strict liability misrepresentation" claim (Fourth Cause of Action) fails because they have not alleged sufficient facts of any such misrepresentations.  *See Hawkins,* No. 1:13-cv-00499, slip op. at 17-18 (finding that plaintiff's fraud claim failed because her theory was not pled with particularity); *Houston*, 2013 WL 3927839, *10 (same); *Kashani-Matts*, 2013 WL 6147032, at *5 (same); *see also* Section III.C.1, *infra*. Thus, Plaintiffs' fraud claims, as pled, attack statements made in the FDA-mandated label and are expressly preempted.

*Caplinger* perfectly demonstrates the above.  There, the plaintiff alleged that the defendants "fraudulently and intentionally misrepresented material and important health and safety product risk information from Plaintiff and her

physicians," which are *identical* to Plaintiff's allegations here.  *Compare*

*Caplinger*, 921 F. Supp. 2d at 1219 (citing allegations of plaintiff's amended

complaint, ¶¶ 93-94) *with Complaint*, ¶ 307.  The court found this claim preempted

because to the extent the claim was based on alleged misrepresentations and

omissions contained in the actual warnings and labels accompanying the Infuse

Device, it was expressly preempted, as such a claim would "permit a finding that

defendants were required to alter" the labeling and warnings that "were specifically

approved by the FDA as part of the PMA process," thereby establishing "labeling

and warning requirements different from, or in addition to, federal requirements for

the Infuse Device."  *Caplinger,* 921 F. Supp. 2d at 1219. [8]

Lastly, even though the FDA-required label warned of bone overgrowth,

Plaintiff's claim hinges on allegations that different or additional warnings should

have been given.  In other words, as alleged, Plaintiffs' fraudulent concealment

cause of action is "in essence" the same as their failure to warn claims.  And

because 21 U.S.C. § 360k(a) does not allow plaintiffs to use state law to impose

---

[8]   Plaintiffs' Complaint also includes references to an October 2012 report by staff of the Senate Committee on Finance.  [*See, e.g., Complaint, ¶¶ 125-127*] This report did nothing more than offer the staff's opinions about those documents, and takes the referenced materials out of context.  The Committee never interviewed Medtronic witnesses about the materials nor offered Medtronic any meaningful opportunity to respond to the report.  The staff report references in the Complaint are subject to a motion to strike (*see Caplinger*, 921 F. Supp. 2d at 1229 (declining plaintiff's request to amend complaint based on the report because it "has possible reliability issues… [that would not] cure the deficiencies in plaintiff's claims")) and have no bearing on this case. *See infra, Sections III.B.2 and III.C.1.*

additional or different warning requirements, preemption is the result.

### d.   Breach of Express Warranty Claim

Plaintiffs' Sixth Cause of Action alleges that Medtronic breached express warranties involving "the safety and efficacy of" the Infuse Device [*Complaint,* ¶ *384*][9] These claims would require a jury to find that the Infuse Device "was not safe and effective." *Gavin*, 2013 WL 3791612, at *15–16; *Caplinger*, 921 F. Supp. 2d at 1222; *Ledet*, 2013 WL 6858858, at *5.  But that would conflict with the FDA's conclusive determination in granting PMA that "there is a 'reasonable assurance' of the device's 'safety and effectiveness.'"  *Riegel*, 552 U.S. at 318; *see, e.g., Dawson*, 2013 WL 4048850, at *6 (warranty claims involving Infuse Device preempted); *Ledet*, 2013 WL 6858858, at *5 (same); *Gavin*, 2013 WL 3791612, at *15 (same); *Caplinger*, 2013 WL 453133, at *14 (same).  That the purported warranties allegedly encompassed off-label uses is immaterial: the FDA approval process "contemplates that approved [devices] will be used in off-label ways." *Caronia*, 703 F.3d at 166.  Thus, this claim is expressly preempted by § 360k(a).

### e.   Negligence Claim

Plaintiffs' negligence claim (Fifth Cause of Action) is preempted because it

---

9   In addition to being preempted, Plaintiffs' breach of express warranty claim fails because the FDA-mandated labeling for the Infuse Device ***expressly disclaimed*** the existence of any warranties, express or implied.  [*See RJN, Exhibit G, Important Medical Information for the Infuse Device, p. 3; see also RJN, Exhibit H, Summary of Safety and Effectiveness Data for the Infuse Device, p. 6*]

would require a finding that, as a matter of state negligence law, the FDA-approved manufacturing, design, and label of the Infuse Device was defective. *See Riegel*, 552 U.S. at 330 (finding negligence claim preempted); *Hawkins,* No. 1:13-cv-00499, slip op. at 24-26 (same); *Ledet*, 2013 WL 6858858, at *5 (same); *Caplinger*, 2013 WL 453133, *14-*15 (same); *Erickson*, 846 F. Supp. 2d at 1093-94 (same). *Dawson*, 2013 WL 4048850, *7 (same).

### f. Consumer Protection Statute

Plaintiffs' Unfair Competition Law claim is premised on the assertion that the device should not have been on the market at all, or that it should have been labeled differently. Such claims are preempted. *See  e.g.*, *Bryant*, 623 F.3d at 1205 (dismissing claims of failure to warn); *McGuan v. Endovascular Techs.*, 182 Cal. App. 4th 974, 983 (2010) (finding all claims preempted including violations of the Consumer Legal Remedies Act); *Ali v. Allergan USA, Inc.,* 2012 WL 3692396, *21 (E.D. Va. Aug 23, 2012) (dismissing claims based on violations of Virginia's Consumer Protection Act and false advertising statute); *Covert v. Stryker Corp.,* 2009 WL 2424559, *1, *16 (M.D.N.C. Aug. 5, 2009) (dismissing claims based on violations of North Carolina's Unfair and Deceptive Trade Practices Act).

## B. Plaintiffs Cannot Avoid Express or Implied Preemption

In an apparent effort to avoid preemption, the Complaint alleges that Medtronic violated various federal regulations.   Yet these allegations do not

overcome *express* preemption because Plaintiffs' claims still would require as a matter of *state* law that Medtronic have given warnings different from, or in addition to, those required under *federal* law.  And to the extent Plaintiffs seek to enforce purported federal regulations, their claims also are *impliedly* preempted under *Buckman* and barred by 21 U.S.C. § 337(a), the FDCA's "no private right of action" provision.

### 1.    Plaintiffs' Boilerplate Allegations Of Federal Violations Do Not Affect Express Preemption

There is a narrow exception to express preemption for claims that "'parallel,' rather than add to, federal requirements." *Riegel*, 552 U.S. at 330; *see also Hawkins*, No. 1:13-cv-00499, slip op. at 7.  To be "parallel," a claim must rest on a state-law requirement "identical" to a federal requirement.  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996); *see also McMullen*, 421 F.3d at 489 (state-law requirement must be "'*genuinely* equivalent'" to federal requirement).

Plaintiffs allege Medtronic violated federal law by engaging in off-label promotion and suggest their claims rest on state law duties that "parallel" federal requirements.  To state a "parallel" claim, a plaintiff must allege (1) the violation of a specific federal requirement applicable to the device; (2) the violation of an *identical*, but independent, state-law duty; and (3) that the predicate federal violation caused his or her injuries.  *See, e.g.*, *McMullen*, 421 F.3d at 488–89; *Caplinger*, 921 F. Supp. 2d at 1214; *Erickson*, 846 F. Supp. 2d 1092-93; *see also*

*Hawkins,* No. 1:13-cv-00499, slip op. at 7, 13 ("Plaintiff cannot simply incant the magic words 'Defendant violated FDA regulations' in order to avoid preemption") (internal quotations omitted); *Simmons,* 2013 WL 1207421, at *3-4.  Plaintiffs' claims fail to satisfy this demanding standard.

*First,* Plaintiffs' off-label promotion theory fails because Plaintiffs do not—and cannot—identify an express federal prohibition on off-label promotion. According to Plaintiffs, "device manufacturers can be held liable for off-label promotion when their products are deemed 'misbranded' under the statute." [*Complaint, ¶ 138* (citing 21 U.S.C. § 331(b))]  But, as the Second Circuit recently held (in rejecting the government's position otherwise), "the [FDCA] and its accompanying regulations ***do not expressly prohibit ... off-label promotion.***" *Caronia,* 703 F.3d at 160 (emphasis added); *see also id.* at 154, 168-169; *Dawson,* 2013 WL 4048850, *6 ("for any of these claims to survive . . .the court must accept Plaintiff's premise that off-label promotion is illegal under the FDCA, and this court cannot do so.").  Because federal law does not expressly prohibit off-label promotion, Medtronic's alleged off-label promotion cannot give rise to a "parallel" state-law claim.

*Second*, even if federal law prohibited off-label promotion, the Complaint still fails to state a parallel claim because there is no state-law duty to abstain from off-label promotion because "even the concept of 'off-label use' is a creature of the

FDCA, is defined by the FDCA, and is not a part of [state] substantive law."
*Caplinger*, 921 F. Supp. 2d at 1219-20; *Gavin*, 2013 WL 3791612, at *17;
*Houston*, 2013 WL 3927839, *8; *Dawson*, 2013 WL 4048850, *6.  Unable to
identify a state-law prohibition on off-label promotion, Plaintiffs instead rely upon
a state-law duty to provide warnings.  Yet allegations that a manufacturer violated
federal law by promoting off-label uses and allegations that a manufacturer
violated state law by failing to issue certain warnings are not "parallel," because a
manufacturer could fulfill the purported federal requirement without satisfying the
state-law requirement (and vice versa).  *See Caplinger*, 921 F. Supp. 2d at 1218
n.4.[10]  As two federal courts of appeals have likewise held, "[s]tate and federal
requirements are not genuinely equivalent"—and thus are not parallel—if, as here,
"a manufacturer could be held liable under the state law without having violated
the federal law." *McMullen*, 421 F.3d at 488–89; *Wolicki-Gables*, 634 F.3d at
1300.

    ***Third,*** the Complaint also does not adequately allege the requisite causal
link between any alleged federal violation and Plaintiff's alleged injuries.  *See*

---

[10]  *Caplinger* predates *Caronia*, and assumed—but did not hold—that such a
requirement exists.  But the *Dawson* court noted in a post-*Caplinger* opinion that it
could not accept "Plaintiff's premise that off-label promotion is illegal under the
FDCA." *Dawson*, 2013 WL 4048850, *6.  In any event, *Caplinger* correctly
concluded that the plaintiff's claims would be preempted ***even if*** off-label
promotion were prohibited by federal law, as did Judge Wilson in holding that
several such claims were preempted as well in *Houston*, 2013 WL 3927839, *8-
*10.

*Houston*, 2013 WL 3927839, *5.  While Plaintiff contends her alleged injuries result from her surgeon's decision to use the Infuse Device off-label, she cannot claim that her alleged injuries resulted from any failure to warn, because she and her surgeon *were* warned of these very risks.  The Infuse Device's FDA-approved label explicitly warning that "[t]he safety and effectiveness of the InFUSE Bone Graft component ... implanted at locations other than the lower lumbar spine ... have not been established."  [*RJN, Ex. G, at p. 4; see also id. at 9-10* (warning about "nerve damage," "[n]eurological system compromise," and "back and leg pain" associated with use of the device)]  Given this publicly available information, Plaintiff cannot plausibly claim justifiable reliance on alleged misrepresentations about the risks of off-label use or of uncontrolled bone growth.

## 2.    Section 337(a) Impliedly Preempts and Bars Plaintiffs' Claims

Even if off-label promotion allegations could save Plaintiffs' claims from express preemption, their claims would still be "impliedly preempted under *Buckman* and [21 U.S.C.] § 337(a)."  *Caplinger*, 921 F. Supp. 2d at 1223; *Ledet*, 2013 WL 6858858, at *4; *see also Houston,* 2013 WL 3927839, *8 (holding that any negligence claims based on alleged illegal off-label promotion were impliedly preempted because such claims 'exist[s] solely by virtue' of federal regulations, and is not rooted in any traditional state tort law.")  Meanwhile, in *Perez*, the Ninth Circuit held the fraud claim based on alleged off-label promotion was also

impliedly preempted.  The court determined that an off-label-based "fraud by omission claim 'exist[s] solely by virtue of the FDCA … requirements,' with respect to approved use of the [medical device]." *Perez*, 711 F.3d at 1119 (citation omitted).  The Court reasoned that off-label use is a concept entirely derived from the FDCA, and "'the existence of these federal enactments is a critical element in their case.'"  *Id.* (quoting *Buckman*, 531 U.S. at 353).

In enacting the FDCA, Congress declined to create a private cause of action and required that any action to enforce the FDCA "shall be by and in the name of the United States" (21 U.S.C. § 337(a)), thus mandating that the FDCA and its implementing regulations be "enforced exclusively by the Federal Government." *Buckman*, 531 U.S. at 352.  Section 337(a) therefore impliedly preempts any private action to enforce duties created by the federal regulations.  *Caplinger*, 921 F. Supp. 2d at 1214-15; *Riley*, 625 F. Supp. 2d at 776–77.  "States are not granted any authority," including by recognition of "common-law suit[s]…to enforce compliance with the specific federal requirements established by the PMA process."  *Kemp v. Medtronic, Inc.*, 231 F.3d 216, 236 (6th Cir. 2000).

This Court should thus reject Plaintiffs' attempt to enforce purported federal regulations as an impermissible intrusion on the FDA's exclusive and discretionary authority.  To be sure, § 337(a) does not itself preclude claims that arise under "'traditional state tort law'"—*i.e.*, where there would be "'liability under state law

even if the FDCA had never been enacted.'" *Caplinger*, 921 F. Supp. 2d at 1214 (quoting *Riley*, 625 F. Supp. 2d at 777). But §337(a) forbids private plaintiffs from asserting any "'state claim [that] would not exist if the FDCA did not exist,'" or any claim for which "'the existence of these federal enactments is a critical element,'" because such a claim "'is in substance (even if not in form) a claim for violating the FDCA'" and may be enforced only by the federal government. *Id.* Thus, claims that "'would not exist absent the federal regulatory scheme established by the FDCA'" are impliedly preempted by § 337(a). *Id.*; *accord Loreto v. Procter & Gamble Co.*, 515 Fed. Appx. 576, 579 (6th Cir. 2013) (citing *Riley*, 625 F. Supp. 2d at 777). Here, there is no traditional state-law duty to abstain from off-label promotion, as the very ***concept*** of off-label promotion did not exist until Congress required manufacturers to obtain FDA approval of device labels. *See Caplinger*, 921 F. Supp. 2d at 1219-20 ("[T]he concept of 'off-label use' is a creature of the FDCA, is defined by the FDCA, and is not a part of [state] law."); *Gavin*, 2013 WL 3791612, at *17 (same); *In re Zyprexa Prods. Liab. Litig.*, 2008 WL 398378, *5 (E.D.N.Y. Feb. 12, 2008) ("[T]here is no state-law equivalent of 'off-label.' The concept is entirely federal.").

Thus, by seeking to impose liability for any alleged violation of purported federal regulations relating to off-label promotion, Plaintiffs are either (1) trying to usurp the FDA's regulatory oversight role for policing purported FDA violations;

or (2) basing their tort claims solely on a violation of federal law.  Either way, Plaintiffs' claims run into *Buckman*'s implied preemption principles.

Similarly, to the extent their claims are based on alleged misrepresentations and omissions regarding defendants' practice of promoting and marketing to physicians the off-label use of the Infuse Device, these too are impliedly preempted under *Buckman* and § 337(a).  *See Caplinger*, 921 F. Supp. 2d at 1219-20 (fraudulent misrepresentation/fraud in the inducement claim is "in substance a claim for violating the FDCA and, thus, is clearly preempted under *Buckman* and § 337(a).")  Because "even the concept of 'off-label use' is a creature of the FDCA, is defined by the FDCA" and is not itself a part of Hawaii law, Plaintiffs' fraud claims are impliedly preempted because they are in essence a claim for violating the FDCA regardless of how Plaintiffs label their claims.  *See Caplinger*, 921 F. Supp. 2d at 1219-20.

In short, Plaintiffs' "claims are simply an attempt by [a] private part[y] to enforce the MDA, claims foreclosed by Section 337(a) as construed in *Buckman*." *Bryant*, 623 F.3d at 1205–06.  Such claims are impliedly preempted.

## C.   Independent Grounds Also Bar Certain Claims

### 1.   Plaintiffs' Fraud Claims Are Not Pled with Particularity

Plaintiffs' fraud and misrepresentation claims are not pled with particularity as required by Rule 9(b), which requires pleading the specific circumstances

surrounding an alleged fraud.  *See Cafasso v. General Dynamics C4 Systems, Inc.*,

637 F.3d at 1047, 1055 (9th Cir. 2011) (stating that "claims of fraud or mistake…

must, in addition to pleading with particularity, also plead plausible allegations.");

*Ellis v. Crockett*, 51 Haw. 45, 59 (1969) (dismissing fraud-based claim because

plaintiff did not show "who made the false representations [], what the substance

of the representations was, and what the plaintiffs believe to be the true facts"); *see*

*also Erickson*, 846 F. Supp. 2d at 1093 (holding fraud-based claims were not plead

with particularity because "the Complaint does not allege the specific content of

these misrepresentations.  Nor does the Complaint allege when and where the

misrepresentations were made, or who made them."); *Caplinger*, 921 F. Supp. 2d

at 1220-21 (fraud claims dismissed because they were not pled with particularity);

*Hawkins,* No. 1:13-cv-00499, slip op. at 18 ("Plaintiff fails to allege not only the

content of the off-label promotion directed at his spine surgeon and on which the

surgeon relied, but he also fails to allege who made those representations to his

surgeon and when the representations were made.  Rule 9(b) requires more than

the generalize allegations made here"); *Houston*, 2013 WL 3927839, *10 (same).

Here, Plaintiffs have not pled specifics for any alleged misrepresentations or

omissions made by Medtronic.

Furthermore, even the "general allegations" portion of the Complaint does

not contain the specifics of the alleged misrepresentations to the Plaintiffs'

physicians adequate to support any fraud claim.  For example, Plaintiffs have

thrown in general allegations about an alleged program to "ghostwrite" scientific

articles that allegedly downplayed risks of off-label use [*see Doc., 1, ¶ 253*],

articles in the Spine Journal [*id. at ¶¶ 255-260*], and the Yale University Open

Data Access Project to evaluate Infuse Device clinical trial data [*id. at¶ 263-270*].

But these allegations have nothing to do with Plaintiff or her surgery, alleged

injuries, or surgeon.  Even if these extraneous materials are considered, because

there is no tie between Plaintiff's surgeon and any specific alleged

misrepresentations or omissions, Plaintiffs' fraud claims ultimately rely on a

"fraud-on-the-market" theory, with the "market" being the medical community at

large, rather than specific fraudulent statements to Plaintiff's surgeons.  But courts

have rejected such a theory in the pharmaceutical and medical device context.  *See*

*In re Actimmune Mktg. Litig.*, 2009 WL 3740648, *14 (N.D. Cal. Nov. 6, 2009)

(rejecting "plaintiffs['] argu[ment]…that defendants 'saturated' the market for

information regarding Actimmune, and thus plaintiffs' doctors necessarily relied

upon defendants' misrepresentations when choosing to prescribe Actimmune" as

"nothing more than a repackaging of the 'fraud on the market'" previously rejected

by the court), *aff'd*, 464 Fed. App'x 651 (9th Cir. 2011).

Notably, although Plaintiffs allege that some of these other doctors who

wrote about the Infuse Device were Medtronic "consultants" of some kind, they

notably *never* allege that these other physicians were speaking on Medtronic's behalf at the relevant time, or agents who were authorized to do so. *See Batzel v. Smith*, 333 F.3d 1018, 1035 (9th Cir. 2003) (holding corporation was not vicariously liable for torts of individual because plaintiff failed to show that corporation had control over individual); *see also State v. Hoshijo ex rel. White*, 102 Haw. 307, 319 (2003) ("Vicarious liability under the respondeat superior doctrine ordinarily requires some kind of employment relationship or other consensual arrangement under which one person *agrees to act under another's control*.") (emphasis original).

Second, through the FDA-required labeling for the Infuse Device, Medtronic did warn about the risk of bone overgrowth (among other risks), and yet their doctors proceeded with the surgeries. Given what the label said and what their surgeons actually did, the allegation that Plaintiffs' doctors would have done something different had they known about bone overgrowth or other risks associated with use of the Infuse Device in the cervical spine simply is not plausible. *See Cafasso*, 637 F.3d at 1055 ("[C]laims of fraud or mistake… must, in addition to pleading with particularity, also plead plausible allegations.").[11]

---

[11] *RJN, Ex. G* ("**Potential Adverse Events**: The following is a list of potential adverse events which may occur with spinal fusion surgery with the InFUSE™ Bone Graft/LT-CAGE™ Lumbar Tapered Fusion Device. Some of these adverse events may have been previously reported in the adverse events table…Ectopic and/or exuberant bone formation")

In short, Plaintiffs' fraud-based claims must be dismissed because they are not pled with the requisite particularity.

### 2. Plaintiffs' Breach of Express Warranty Claim Fails

Plaintiffs' breach of express warranty claim also lacks specificity. Just as in *Houston*, Plaintiffs here alleged that "Defendants 'utilized journal articles, advertising media, sales representatives/consultants and paid Key Opinion Leaders to urge the use, purchase, and utilization of the off-label use of Infuse Bone Graft and expressly warranted to physicians and other members of the general public and medical community that such off-label uses, including uses in lumbar fusion procedures, were safe and effective'" and that "her treating surgeon relied on Defendants' express warranty representations regarding the safety and efficacy of off-label use of Infuse, but such off-label uses, including uses in lumbar fusion procedures, were not effective, safe, and proper for the use as warranted in that Infuse was dangerous when put to these promoted uses." *Compare Houston*, 2013 WL 3927839, *10 *with Complaint, ¶¶ 382, 384*. But, as the Court concluded, the plaintiff did "not allege[] sufficient facts for the claim to survive dismissal under Rule 8." *Id.* at *11. The Court found that the plaintiff failed to plead all of the elements of a breach of warranty claim including "***facts demonstrating that Defendants made any affirmations specifically to Plaintiff or her physician so as to form the basis of the bargain***." *Id.* (emphasis added).

Just as in *Houston*, Plaintiffs have not alleged the contents of any warranties, or any other specific affirmation of fact required for an express warranty, that Medtronic allegedly made to Plaintiffs or her physician that were outside the FDA-approved labeling for the Infuse Device nor alleged what was misleading about such warranties, how Plaintiffs and/or her physician relied on such warranties or even attempted to tie such alleged misrepresentations to Plaintiffs' injuries. Plaintiffs' boilerplate breach of express warranty claim does not meet the pleading standards of Rule 8.

### 3.     Plaintiffs' Unfair Competition Law Claim Fails

Plaitniff's Seventh Cause of Action entitled "Violations of Hawaii's Consumer Protection Statutes" refers to Hawaii's Unfair Competition Laws (H.R.S. §§ 480 *et seq.*). [*Complaint, ¶ 398*]  However, to the extent, the Complaint purports to assert a claim for "unfair competition" under Chapter 480, such a claim must also be dismissed because the Complaint does not describe and assert "antitrust injury" sufficient to comply with Rule 8.   *See Davis v. Four Seasons Hotel Ltd.*, 122 Hawaii 324, 423, 437-38, 228 P.3d 303, 317-19 (2010) (a claim of unfair methods of competition requires proof of antitrust injury).

### 4.     Plaintiffs' Punitive Damages Claim Fails

Plaintiffs' claim for punitive damages must also be dismissed.  The punitive damages claim is based on the same allegedly wrongful acts or omissions which

provide the purported bases for all their other claims.  Since all those other claims

fail, so too does their punitive damages claim.

## IV.    Conclusion

For the reasons stated above, Plaintiffs' claims should be dismissed with

prejudice.

Dated:  Honolulu, Hawaii, February 4, 2014.

GOODSILL ANDERSON QUINN & STIFEL

By  /s/ Corlis J. Chang
      CORLIS J. CHANG
      THOMAS BENEDICT

*Attorneys for Defendants Medtronic, Inc.,
and Medtronic Sofamor Danek USA, Inc.*