IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KARLA BEAVERS-GABRIEL, ) | CIV. NO. 13-00686 JMS-RLP |
| ) | |
| Plaintiff, ) | ORDER AFFIRMING MAGISTRATE |
| ) | JUDGE'S ORDER GRANTING IN |
| vs. ) | PART AND DENYING IN PART |
| ) | PLAINTIFF'S MOTION TO COMPEL, |
| MEDTRONIC, INC. and ) | DOC. NO. 100 |
| MEDTRONIC SOFAMOR DANEK ) | |
| USA, INC., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## ORDER AFFIRMING MAGISTRATE JUDGE'S ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL, DOC. NO. 100

### I. INTRODUCTION

Before the court is Defendants Medtronic, Inc. and Medtronic Sofamor Danek USA, Inc.'s (collectively, "Medtronic" or "Defendants") appeal of a portion of Magistrate Judge Richard L. Puglisi's March 24, 2015 Order Granting in Part and Denying in Part Plaintiff Karla Beavers-Gabriel's ("Plaintiff") Motion to Compel Defendants to Provide Further Responses to (1) Plaintiff's First Request for Production of Documents and Tangible Things; and (2) Plaintiff's First Set of Interrogatories, Doc. No. 100, (the "March 24 Order"). Doc. No. 123. Defendants contend that the March 24 Order is clearly erroneous and contrary to

law to the extent it orders Defendants to produce three categories of documents: (1) "Communications with government agencies outside of the United States;" (2) "Documents relating to published medical journal articles discussing the Infuse Device that were not read or relied upon by Plaintiff's surgeon, Dr. Graham;" and (3) "Documents relating to Dr. Foley, a physician who was not involved in the care and treatment of Plaintiff." *Id*. at 2-4.

For the reasons discussed below, the court AFFIRMS the March 24 Order.

## II.  **BACKGROUND**

On December 16, 2013, Plaintiff filed this diversity action asserting state law claims based on injuries she sustained after undergoing spinal surgery in which her surgeon used Defendants' Infuse® Bone Graft (the "Infuse Device"), a Class III prescription medical device, in an off-label manner not approved by the Food and Drug Administration ("FDA").  Pursuant to this court's orders dismissing some of Plaintiff's claims and granting leave to file an amended complaint, *see* Doc. Nos. 32-33, 49, & 62, Plaintiff filed a Second Amended Complaint ("SAC") on October 6, 2014, asserting the following claims:

> (1) Fraudulent Misrepresentation and Fraud by Omission (Count I), and Negligent Misrepresentation (Count II), to the extent based on Defendants' alleged

>misrepresentations and/or concealments regarding health
>and safety problems associated with off-label use of the
>Infuse Device;
>
>(2) Breach of Express Warranty (Count V), to the extent
>based on Defendants' alleged representations regarding
>off-label use of the Infuse Device; and
>
>(3) Strict Products Liability - Failure to Warn the FDA
>(Count III); and Negligent Failure-to-Warn the FDA
>(Count IV), to the extent based on Defendants' alleged
>failure to warn Dr. Graham regarding the adverse effects
>of using the Infuse Device in an off-label manner.

Doc. No. 84, Order Denying Defs.' Mot. to Dismiss Pl.'s SAC (the "January 9 Order") at 38-39; *Beavers-Gabriel v. Medtronic, Inc.*, 2015 WL 143944, at *15 (D. Haw. Jan. 9, 2015).

On November 7, 2014, Plaintiff served numerous interrogatories and requests for production of documents ("RFP"). Doc. No. 126-7, Goldenberg Decl. ¶ 2. On February 6, 2015, Plaintiff filed a Motion to Compel based on Defendants' allegedly inadequate responses to the interrogatories and RFPs. Doc. No. 88. Thereafter, Magistrate Judge Puglisi issued the March 24 Order granting in part and denying in part Plaintiff's Motion to Compel. Doc. No. 100.

On April 7, 2015, Defendants filed a Motion for Reconsideration as to the same three categories of documents at issue in the present appeal. Doc. No. 106. On April 28, 2015, Magistrate Judge Puglisi denied the Motion for

3

Reconsideration and ordered Defendants to produce the documents at issue by May 4, 2015. Doc. No. 120, Order at 5. On May 5, 2015, Defendants filed the instant appeal, Doc. No. 123, and the parties stipulated to stay production of these documents subject to the appeal, and to an expedited briefing schedule, which includes Defendants' waiver of a Reply. Doc. No. 121. Plaintiff filed her Opposition on May 8, 2015. Doc. No. 126. The court finds this matter suitable for disposition without a hearing pursuant to Local Rules ("LR") 7.2(d) and 74.1.

### III.  STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(a), and LR 74.1, any party may appeal to the district court any pretrial nondispositive matter determined by a magistrate judge. Such an order may be reversed by the district court judge only when it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); LR 74.1.

The threshold of the "clearly erroneous" test is high and significantly deferential. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Matthews v. Chevron Corp.*, 362 F.3d 1172, 1180 (9th Cir. 2004); *Boskoff v. Yano*, 217 F. Supp. 2d 1077, 1083 (D. Haw. 2001);

*Thorp v. Kepoo*, 100 F. Supp. 2d 1258, 1260 (D. Haw. 2000). In comparison, a magistrate judge's order is contrary to law if the judge applies an incorrect legal standard or fails to consider an element of the applicable standard. *See Hunt v. Nat'l Broad. Co.*, 872 F.2d 289, 292 (9th Cir. 1989) (noting that such failures constitute abuse of discretion).

## IV. **DISCUSSION**

Defendants argue that the March 24 Order is clearly erroneous and/or contrary to law as to each of the three categories of documents. The court sets forth the legal standard governing the scope and limits of discovery, and then addresses Defendants' arguments as to each category of documents in turn.

**A.     Legal Standard Governing Scope and Limits of Discovery**

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The Ninth Circuit generally favors a broad scope of discovery. *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995) ("[W]ide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth.").

However, the court must limit such discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). With regard to electronically stored information, "on motion to compel . . . , the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). Upon such showing, "the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)." *Id.*

**B.     Application to the Three Categories of Documents in Dispute**

*1.     Communications with Government Agencies Outside of the United States*

In RFP Nos. 30 and 31, Plaintiff seeks "[a]ll documents that discuss, refer to, relate to, or describe communications made by you to any government agency (both inside and outside of the United States) relating to adverse events

occurring from" the use of the Infuse Device or other related products. Doc. No. 88-3, Pl.'s Ex. 1.[1]

        *a.*     *Alleged briefing and meet-and-confer deficiencies*

Defendants first contend that directing them to produce communications with government agencies outside of the United States is clearly erroneous because the issue of communications with foreign government agencies was not addressed during the parties' meet-and-confer process, included in Plaintiff's Motion to Compel, or briefed by either party. Thus, Defendants contend that Plaintiff waived this request and/or that the March 24 Order exceeds the relief requested. The court rejects this argument.

Local Rule 37.1 requires that prior to filing a discovery motion, moving counsel must meet-and-confer with opposing counsel "concerning all disputed issues, in a good faith effort to limit the disputed issues and, if possible, eliminate the necessity for a motion[.]"

---

[1] More specifically, RFP No. 30 seeks "[a]ll documents that discuss, refer to, relate to, or describe communications made by you to any government agency (both inside and outside of the United States) relating to adverse events occurring from transforaminal, posterior, and/or posterolateral uses of the Relevant Products." Doc. No. 88-3, Pl.'s Ex. 1.
    And RFP No. 31 seeks "[a]ll documents that discuss, refer to, relate to, or describe communications made by you to any government agency (both inside and outside of the United States) relating to adverse events occurring from use of Infuse bone graft and/or rhBMP-2 with non-LT-Cages or without a cage. *Id.*

The record shows that contrary to Defendants' assertion, the parties engaged in the meet-and-confer process several times and, with respect to RFP Nos. 30-31, discussed Plaintiff's: (1) request that Defendants "provide information provided *to all government agencies* (*i.e.*, the Justice Department and *not just the FDA*);" (2) disagreement with both Defendants' refusal to provide responsive documents and assertion that the annual reports to the FDA were sufficient; and (3) request that "if [Defendants] are taking the position that *all adverse events reported to the FDA are a full list of all adverse events of which [they] are aware*, that [they] indicate [that] position in writing." Doc. No. 88-7, Pl.'s Ex. 5, at 4 (emphases added). These discussions were sufficient to put Defendants on notice that Plaintiff disputes Defendants' objection to production of *all* requested communications.

The record also shows that Plaintiff moved for an order compelling Defendants to produce "complete responses" to RFP Nos. 30-31. Doc. No. 88-1, Pl.'s Mot. at 20-21. The only briefing deficiency appears to be Defendants' choice not to raise their objection to production of communications with foreign government agencies in their opposition to Plaintiff's Motion to Compel.

Based on the foregoing, the court finds that the March 24 Order is not clearly erroneous or contrary to law based on any alleged deficiencies in the briefing and/or meet-and-confer process.

          b.        *The requested communications are relevant*

Defendants next contend that requiring production of such documents is contrary to law because the documents are not relevant, and the burden of producing such documents outweighs any potential benefit. Again, Defendants' arguments are without merit.

Remaining in this action is a strict products liability claim premised on allegations of a failure to warn the FDA. The March 24 Order determined that "[d]ocumentation that reflect any concern or adverse event related to the use of the Infuse Device in the off-label manner used on Plaintiff is relevant to this claim." Doc. No. 100, March 24 Order at 19. Defendants' arguments that the March 24 Order's relevancy finding is contrary to law do not address the key issue here -- the extent and timing of Defendants' actual knowledge of any adverse events beyond what was included in annual reports submitted to the FDA. Accordingly, the March 24 Order's determination that the requested communications with government agencies outside the United States is relevant is neither clearly erroneous nor contrary to law.

### c. *Defendants waived their undue burden argument*

Finally, Defendants argue that production of these communications would be unduly burdensome based on logistical complexities. Because Defendants failed to raise this argument in their opposition to the Motion to Compel before Magistrate Judge Puglisi,[2] this argument is waived, and the court need not consider it now. *See United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); *see also Marshall v. Chater*, 75 F.3d 1421, 1426-1427 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."); *United States v. Boyce*, 2014 WL 7507240, at *7 (C.D. Cal. May 2, 2014) (declining to consider argument made for the first time on Rule 72(a) appeal that was not made before the magistrate judge).

Based on the foregoing, the court AFFIRMS the March 24 Order compelling production of communications with government agencies outside of the United States.

---

[2] In opposing the Motion to Compel, Defendants argued that production of these documents "would be unduly burdensome where, as here, Plaintiff's surgeon already testified that he was well aware of the risks at issue here and he did not review or rely upon adverse event reports." Doc. No. 90, Defs.' Opp'n at 28-29. The March 24 Order rejected this argument, explaining that "Defendants fail to explain how Dr. Graham's testimony results in an undue burden to Defendants." Doc. No. 100, Order at 19.

## 2. *Documents Relating to Published Medical Journal Articles Discussing the Infuse Device*

### a. *The requested discovery does not conflict with prior orders*

Defendants contend that the March 24 Order requiring them to produce information and documents pertaining to medical literature on the Infuse Device that were written or "ghost written" by Defendants, as requested in RFP Nos. 20-21[3] and Interrogatory Nos. 13-14,[4] is clearly erroneous because it "permits Plaintiff to pursue broad discovery based on a claim that this court rejected -- a fraud claim based on Dr. Graham's purported reliance on unspecified medical journal articles." Doc. No. 123, Appeal at 18. Thus, Defendants contend that the

---

[3] RFP No. 20 seeks: "[a]ll documents that refer to, relate to, or describe any studies or articles in medical journals that you, your independent contractors, paid physicians, and/or key opinion leaders have ever written or ghost-written (in whole or in part), edited, drafted, or contributed to relating to transforaminal, posterior, and/or posterolateral uses of Infuse® Bone Graft and/or rhBMP-2." Doc. No. 88-3, Pl.'s Ex. 1 at 10.

RFP No. 21 seeks: "[a]ll documents that refer to, relate to, or describe any studies or articles in medical journals that you, your independent contractors, or key opinion leaders have ever written or ghost-written (in whole or in part), edited, drafted, or contributed to relating to use of Infuse® Bone Graft and/or rhBMP-2 with non-LT-Cages or without a cage." *Id.*

[4] Interrogatory No. 13 asks Defendants to: "[i]dentify, by article name, journal, author and date, all medical journal articles that you, your independent contractors, or key opinion leaders have ever written or ghostwritten (in whole or in part), edited, drafted, or contributed to relating to transforaminal, posterior, and/or posterolateral use of Infuse® Bone Graft and/or rhBMP-2." Doc. No. 88-5, Pl.'s Ex. 3 at 8.

Interrogatory No. 14 asks Defendants to: "[i]dentify, by date, name, researchers, and type, every study (including clinical trial, clinical study, testing, or other research) for which you provided any funds, resources, or support (in whole or in part) relating to transforaminal, posterior, and/or posterolateral use of Infuse® Bone Graft and/or rhBMP-2 without the required LT-Cage." *Id.*

11

March 24 Order conflicts with this court's prior ruling. Again, Defendants are mistaken.

The January 9 Order ruled that Plaintiff's claims for fraud and negligent misrepresentation remain in this action "to the extent [they are] based on Defendants' alleged misrepresentations and/or concealments regarding health and safety problems associated with off-label use of the Infuse Device." *Beavers-Gabriel*, 2015 WL 143944, at *15. This court found that Plaintiffs sufficiently alleged that Dr. Graham relied upon at least some medical literature and/or information based on such literature that was conveyed by Medtronic sales representatives:

> [T]he SAC asserts that (1) Dr. Graham requested that Cloward provide literature demonstrating that the Infuse Device was efficacious for the procedures in which he intended to use the product, (2) the literature was likely directed to off-label uses because Dr. Graham does not perform ALIF procedures, and (3) none of the articles provided by Cloward contained alarming levels of adverse events which are now contained in more current literature. The SAC further asserts that Dr. Graham obtained dosing information from Medtronic sales representatives when using the Infuse Device off-label because they have "up-to-date information as far as the optimal dose to put in there," and that Dr. Graham relied on Cloward to determine the proper dose for Plaintiff's procedure. . . . Thus, these allegations raise the reasonable inference that Cloward provided Dr. Graham information indicating that the Infuse Device was safe and effective for Plaintiff's TLIF procedure, including

>  specific dosage information even though there is no safe
>  and effective dosage when used off-label, and that Dr.
>  Graham relied on this information.

*Id.* at *8 (internal citations omitted).

Based on this ruling, Magistrate Judge Puglisi found that the requested information and documents pertaining to medical literature on the Infuse Device is relevant to Plaintiff's remaining claims:

> [T]hese documents are necessary to show that
> Defendants were involved in shaping the safety and
> efficacy profile of the Infuse Device in an untruthful
> manner, and that Defendants' involvements with these
> studies and articles placed Defendants on notice that
> their statements about the Infuse Device were untruthful
> to surgeons including Dr. Graham. . . . Documents
> related to Defendants' involvement in studies related to
> the Infuse Device is relevant to Plaintiff's fraud and
> failure to warn claims based on Plaintiff's allegations
> that Defendants had knowledge that the off-label use of
> the Infuse Device was unsafe, but continued to
> misrepresent its safety.

Doc. No. 100, March 24 Order at 16 (internal citations omitted).

Thus, the March 24 Order compelling Defendants to provide the requested information and documentation pertaining to medical literature on the Infuse Device is not based on a claim that was previously rejected, does not conflict with this court's prior rulings, and is therefore not clearly erroneous or contrary to law.

13

b.  *Defendants waived their undue burden argument*

Defendants next contend that the March 24 Order is contrary to law because compliance would be unduly burdensome.  Defendants failed to raise this argument in opposition to the Motion to Compel.  *See* Doc. No. 120, Order Denying Motion for Reconsideration at 4 ("Defendants . . . present a new argument, namely the burden of producing all of the medical journals.").  As set forth above, Defendants waived this argument and the court will not consider it now.  *See Howell*, 231 F.3d at 621; *Marshall*, 75 F.3d at 1426-1427; *Boyce*, 2014 WL 7507240, at *7.

The court therefore AFFIRMS the March 24 Order compelling production of information and documentation pertaining to medical literature on the Infuse Device.

3.  ***Documents Related to Compensation of Dr. Foley***

Finally, Defendants argue that the March 24 Order finding relevant and compelling discovery of compensation received by Dr. Foley, as requested in

RFP No. 7,[5] is clearly erroneous because such finding conflicts with the January 9 Order. Doc. No. 123, Defs.' Appeal at 22. The court disagrees.

The January 9 Order determined that Plaintiff plausibly alleged a fraud claim, but noted that the SAC's allegations regarding Dr. Foley's presentation at a medical conference in Memphis, alone, were insufficient to support such claim. *Beavers-Gabriel*, 2015 WL 143944, at *7. Discovery revealed, however, that Dr. Foley may have discussed the Infuse Device at the Memphis medical conference in the context of discussing minimally invasive spinal surgery. Relying on this discovery, Magistrate Judge Puglisi rejected Defendants' contention that Dr. Foley's compensation information is not relevant, finding that Dr. Foley discussed the Infuse Device, in passing and/or as part of a larger discussion:

> First, the Court finds that payment made to Dr. Foley should be produced, even if Dr. Foley did not specifically speak about the Infuse Device at the conference Dr. Graham attended. According to Defendants, Dr. Graham testified that "[t]here might have been some passing mention [of the Infuse Device] or something like that, but the real focus was minimally invasive spine surgery." As discussed above, Plaintiff

---

[5] RFP No. 7 seeks: "[a]ll documents that refer to, relate to, or describe any specific compensation, reimbursement, reward, royalty, incentive, gift, honorarium, or transference of funds, goods, or services provided by you to Dr. Kevin Foley and/or Dr. Todd Lanman." Doc. No. 88-3, Pl.'s Ex. 1 at 7.

> contends that the medical community and Defendants classify the off-label procedure used on Plaintiff using the Infuse Device as "minimally invasive spine surgery." The Court thus finds that information related to Dr. Foley is relevant and GRANTS Plaintiff's request to compel Defendants to include Dr. Foley in their response to RFP No. 7.

Doc. No. 100, March 24 Order at 11-12. Because discovery is broadly construed, *see Epstein*, 54 F.3d at 1423, and the requested discovery is minimal, Magistrate Judge Puglisi's ruling -- that information regarding Defendants' compensation to Dr. Foley is relevant and should be produced -- is neither clearly erroneous nor contrary to law. Accordingly, the court AFFIRMS the March 24 Order compelling production of information regarding compensation to Dr. Foley.

## V. <u>CONCLUSION</u>

Based on the foregoing, the court finds that the March 24 Order is neither clearly erroneous nor contrary to law. Accordingly, Magistrate Judge Puglisi's Order Granting in Part and Denying in Part Plaintiff's Motion to Compel, Doc. No. 100, is AFFIRMED.

The court lifts the stay on Defendants' obligation to produce these documents. The parties are ordered to meet and confer before June 1, 2015 to determine a date by which Defendants must produce (1) communications with

government agencies outside of the United States; (2) documents and information relating to published medical journal articles discussing the Infuse Device; and (3) documents relating to compensation of Dr. Foley. If the parties are unable to agree upon a date for production of these materials, Plaintiff must contact Magistrate Judge Puglisi's chambers on or before June 2, 2015 to schedule a discovery conference to set a deadline for production.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, May 26, 2015.



        /s/ J. Michael Seabright
        J. Michael Seabright
        United States District Judge

*Beavers-Gabriel v. Medtronic, Inc., et al.*, Civ. No. 13-00686 JMS-RLP, Order Affirming Magistrate Judge's Order Granting in Part and Denying in Part Plaintiff's Motion to Compel, Doc. No. 100